**FILED**

JAN - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIGITTE R. HAWKINS ) <br> 2309 Joseph Drive ) <br> Clinton, Maryland 20748 ) <br>            Plaintiff, ) <br> vs. ) <br> ) <br> ALBERTO GONZALES, ATTORNEY GENERAL ) <br> DEPARTMENT OF JUSTICE ) <br> 950 Pennsylvania Ave. NW ) <br> Washington, D.C. 20530 ) <br>            Defendant. ) | CASE NUMBER 1:07CV00010 <br> JUDGE: Colleen Kollar-Kotelly <br> DECK TYPE: Employment Discrimination <br> DATE STAMP: 01/04/2007 |

**JURY ACTION**

## COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Plaintiff, by counsel, for her complaint against the Defendant, says:

### JURISDICTION

1. This action is brought pursuant to the provisions of 28 U.S.C.§1331 which provides for the maintenance of a civil action in the United States District Court for a matter arising under the Constitution, laws and treaties of the United States, and 28 U.S.C. §1343(a)(4) to recover damages or secure equitable relief under any Act of Congress providing for the protection of civil rights. More specifically, it involves Title VII of the Civil Rights Act of 1964, and its 1972 and 1991 Amendments, 42 U.S.C. § 2000e et. seq., including 42 U.S.C. § 2000e-16 and §704(a) of Title VII, and the regulations promulgated thereunder, including 29 C.F.R. 1613 et. Seq. Additionally, this action is being maintained under the Declaratory Judgment Act, 28 U.S.C.§§2201 and 2202, which authorizes the District Courts to declare the rights and other legal relationships of any interested persons seeking such declaration irrespective of whether

1

further relief could be granted. It has been more than 180 days since the acts complained of were committed, and since June 22, 2005, when Mrs. Hawkins initially contacted the EEO Office and filed an EEO complaint alleging discrimination and retaliation, and since September 23, 2005, the date the Complaint was accepted for processing. Venue is present under the provisions of 28 U.S.C. §1391(e) and 42 U.S.C. §2000e-16(c) inasmuch as the Defendant is an officer of the United States and is sued in his official capacity, and the District of Columbia is the place where the acts and omissions giving rise to the claim occurred, and were maintained.

## PARTIES

2. The Plaintiff, BRIGITTE R. HAWKINS (hereinafter "Mrs. Hawkins"), is an African-American female. At all material times herein, Mrs. Hawkins was a Management Analyst, GS-343-11 for the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "BATF"), located at 650 Massachusetts Ave. NW, Washington, D.C., 20226. She held that position as a GS-343-11 Management Analyst within the Personnel Division, of the BATF. She was the target of acts of racial discrimination and has filed EEO complaints, of which the Defendant and his agents are aware.

3. The Defendant, ALBERTO GONZALES, is the Attorney General of the United States, and is the titular head of the U.S. Department of Justice, an agency of the United States Government. In his capacity as an officer of that agency, he supervises the subsidiary agencies which make up the Department of Justice, including the BATF. He is empowered to appoint and supervise officers and employees of said BATF, and the challenged actions were committed by his subordinates, agents and employees. He is ultimately responsible for the discriminatory acts complained of herein and is being sued in his official capacity.

## STATEMENT OF FACTS

4. In November 2002, Mrs. Hawkins was selected as a GS-343-11 Management

Analyst in the Personnel Division of the Office of Management, BATF, after competition for that position.

5. For a period of more than sixteen (16) years, Mrs. Hawkins had worked on budget and finance related issues, and her appointment as a Management Analyst to work on budget issues on the staff of the Chief of the Personnel Division was merely the latest position that she had held in this important area. In her position as a GS-343-11 Management Analyst, her job was to manage and monitor the more than $3.3 million dollar budget for the Personnel Division

6. Her duties on the staff of the Chief of the Personnel Division also included the task of reconciling the budget submissions tendered by the Division's branch chiefs in preparation of the overall Division budget request, and to advise the Chief of the Personnel Division regarding budget matters. Additionally, her duties included serving as liaison between the Personnel Division and other departments on budget matters.

7. During the course of her contacts with other departments and divisions, she learned that the GS-343 Management Analysts, assigned to budget duties in those departments and divisions, performed the same duties that she was then performing, but were graded at the pay level of at least a GS-343-13.

8. After her examination of the position descriptions of those Management Analysts, Mrs. Hawkins realized that she was already performing the duties set forth in those higher graded position descriptions. In her last performance appraisal before Diane E. Filler, the Alleged Discriminating Official (hereinafter "ADO"), assumed her position, Mrs. Hawkins received a performance appraisal of "Outstanding." The written evaluation submitted in support of the "Outstanding" rating attested to the vast knowledge and expertise that Mrs. Hawkins had acquired over the years in the budget area, and indicated that she was performing the assigned tasks at a high level.

9. In May 2004, Diane E. Filler (the "ADO"), a Caucasian female, assumed her new position as Chief of the Personnel Division of BATF. In this position, she oversaw a staff of more than 90 persons. Prior to this time, on information and belief, the ADO had never managed a staff of more than ten persons.

10. Prior to assuming her duties, and continuing up to and including the date that Mrs. Hawkins filed her EEO complaint of racial discrimination, the ADO had no budget experience, and had never taken any courses or had any training in the area of finance or budget.

11. Shortly after the ADO was appointed to the position of Chief of the personnel Division, Mrs. Hawkins approached the ADO and requested that her position be reclassified to at least the grade of GS-343-12. In support of her request, Mrs. Hawkins noted that persons holding similar positions within BATF were graded at the GS-343-13 level, and she advised the ADO that she had examined their position descriptions and learned that their position descriptions were materially identical to hers. Moreover, Mrs. Hawkins noted, she was performing the duties set forth in their higher graded position descriptions.

12. The options available to the ADO were to 1) reject Mrs. Hawkins' request for the promotion out of hand, 2) have a position description prepared for a GS-343-12 management analyst, advertise the position and allow Mrs. Hawkins to compete for the newly created position, or 3) permit a desk audit to be performed and abide by the results of that audit.

13. On or about December 2004, after consultation with her senior staff, the ADO elected to have a desk audit conducted to determine at what grade level the incumbent (Mrs. Hawkins) was performing her duties. The ADO selected the desk audit option because she knew that Mrs. Hawkins would be leading candidate for the position of a GS-343-12 Management Analyst, if the new position had been created and advertised.

Further, the desk audit option held out the probability that the duties being performed by Mrs. Hawkins would be sustained at the GS-343-11 level since desk audits are generally unsuccessful.

14. In October 2004, Barbara Blackwood, a contract employee assigned to the Personnel Division, was asked by the Assistant Chief, Personnel Division, Vivian White, to conduct a desk audit of Mrs. Hawkins' position. Ms. Blackwood had more than 20 years of government experience in the area of classifications and was highly qualified to conduct the desk audit.

15. Ms. Blackwood performed the requested desk audit in accordance with the guidelines set by the U. S. Office of Personnel Management ("OPM"), and examined all pertinent information and data with respect thereto.

16. After obtaining the necessary data to perform the audit, Ms. Blackwood applied the OPM Qualification Standards to the data and determined that Mrs. Hawkins was not properly graded, and was performing her duties at the level of a GS-343-12. Ms. Blackwood then prepared a new position description for Mrs. Hawkins, based upon the results of the desk audit, and submitted her findings and the new position description to the ADO on or about February 10, 2005.

17. Upon learning that the desk audit had revealed that Mrs. Hawkins was entitled to a promotion up to the level of a GS-343-12, the ADO delayed contacting Mrs. Hawkins with the news, and only revealed the results of the audit to Mrs. Hawkins on or about May 27, 2005. At that time, the ADO advised Mrs. Hawkins that she was not prepared to accept the results of the desk audit. Mrs. Hawkins saw an EEO counselor regarding her claim of discrimination on June 22, 2005.

18. Over the next several months, the ADO met with Ms. Blackwood for the purpose of undoing the results of the desk audit, and demanded that Mrs. Hawkins' position be stripped of all duties which would support a grade increase to a GS-343-12.

19. In the ensuing months, the ADO stripped enough duties from Mrs. Hawkins' position description that she changed the job series and classification of Mrs. Hawkins' position from that of a GS-343-11 Management Analyst, with promotion potential, to that of a GS-301-11 Management Support Specialist with no promotion potential.

20. After stripping enough duties from Mrs. Hawkins' position description to change the job classification series, the ADO assigned these stripped duties to Ms. Debbie Gunther, a GS-343-14 Management Analyst who was hired in June 2005, and required Mrs. Hawkins to report to Ms. Gunther, a Caucasian female, regarding all budget matters.

21. Ms. Gunther had no prior experience or training in the area of budget and finance, which would have prepared her to assume the duties stripped from Mrs. Hawkins' position description. Nor did she have the requisite background or training to provide oversight and supervision to Mrs. Hawkins relative to the budget matters. Nevertheless, Mrs. Hawkins was required to perform the same duties as she had before she complained about her grade classification, although the responsibility for those duties was now included in the position description of the GS-14 staffer to whom Mrs. Hawkins reported.

22. When she joined the staff of the Personnel Division, Ms. Gunther did not have any supervisory duties to perform. After Mrs. Hawkins complained about the classification of her position, a supervisory role was created for Ms. Gunther when three junior staffers, including Mrs. Hawkins, were directed to report to her.

23. Prior to the arrival of the ADO, Mrs. Hawkins attended all of the staff meetings and had unfettered access and involvement in the preparation of the budget. After she complained about her classification, and filed her EEO complaint, Mrs. Hawkins was excluded from staff meetings and her role in the budget was limited although she was still required to perform the same tasks and present the information to Ms. Gunther. Ms. Gunther admitted that she lacked the budget expertise of Mrs. Hawkins

and that such expertise was necessary to perform the newly assigned budget duties of her GS-14 position.

24. Because of the stress and tension occasioned by the discriminatory treatment she received from the ADO, and the modifications to her position description and duties in order to bar her chances for future promotion and development, Mrs. Hawkins suffered severe mental and emotional strain and distress, and was forced to seek employment at the lower GS-9 pay level in another office in order to escape the stressful environment in which she then found herself.

25. Immediately prior to her departure from the Personnel Division, Ms. Gunther issued Mrs. Hawkins a negative closeout evaluation. In the negative closeout evaluation, Ms. Gunther acknowledged that she lacked the requisite knowledge and expertise to oversee the budget matters previously assigned to Mrs. Hawkins. Ms. Gunther also admitted she was reliant upon Mrs. Hawkins' expertise because of her lack of knowledge and expertise.

26. Ms. Gunther showed the evaluation to the ADO prior to issuing the statement, who approved of its issuance, including the language that Ms. Gunther lacked the necessary expertise to perform the budget duties. At the time the closeout evaluation was issued, the ADO and Ms. Gunther were aware of Mrs. Hawkins' protected prior EEO activity and the closeout evaluation was issued because of it. The evaluation was intended to harm and damage Mrs. Hawkins' efforts to get a promotion in the future.

27. Mrs. Hawkins was in fact highly qualified for the position she held in the Personnel Division and was deserving of a promotion to the GS-12 level, as well as further consideration for promotion to the GS-343-13 level.

28. The ADO was averse to any African-American receiving credit for performing the important duties related to the budget, and accordingly found it more acceptable to place the responsibility for these important duties under an unqualified Caucasian female.

To inhibit Mrs. Hawkins' ability to seek a subsequent desk audit, the ADO stripped duties from Mrs. Hawkins' position description in order to ensure that no African-American had any promotion potential in her office with respect to the important duties.

29. Mrs. Hawkins was highly qualified for her Personnel Division position and was deserving of a promotion to at least the GS-12 level. The aforementioned conduct by the ADO, to deny Mrs. Hawkins a promotion mandated by OPM guidelines because of her race, violated Title VII of the Civil Rights Act of 1964, and its 1972 and 1991 Amendments, 42 U.S.C. § 2000e et. seq., including 42 U.S.C. § 2000e-16 and § 704(a) of Title VII, and the regulations promulgated thereunder, including 29 C.F.R. 1613 et. seq.

## COUNT ONE

30. Mrs. Hawkins adopts by reference paragraphs 1 through 29 above and incorporates them by reference as if fully set forth herein.

31. Commencing on or before May 27, 2004, and continuing thereafter, up to and including the date Mrs. Hawkins left the Personnel Division of the BATF, Mrs. Hawkins was the target of disparate treatment on the basis of her race in that she was performing duties for which she was highly qualified and which should have been classified at a higher grade but were not because of her race.

32. Her expertise in the area of the Division's budget allowed her to exercise a high level of independence in the performance of her duties, and permitted her the opportunity to enhance her prospects for a higher grade by virtue of the level of autonomy that she enjoyed and through her access to senior managers of the agency.

33. Mrs. Hawkins was the victim of racial discrimination in the terms and conditions of her employment in that she was denied a promotion to the GS-343-12 level solely because of her race, despite the fact that her duties and performance merited such a promotion, and an independent desk audit confirmed her duties and performance at the GS-12 level.

34. If Mrs. Hawkins had been Caucasian, and had been performing at the same high level that she was performing, and possessed the same expertise and knowledge that she possessed, and a desk audit had shown that her position had been mis-classified at the GS-11 level, and should have been at the GS-12 grade level, she would have received the promotion to a GS-12.  Mrs. Hawkins was denied the merited promotion to the GS-343-12 level in violation of Title VII of the Civil Rights Act of 1964, as amended, solely because of her race.

## COUNT TWO

35. Mrs. Hawkins adopts by reference paragraphs 1 through 34 above and incorporates them by reference as if fully set forth herein.

36. Commencing on or before May 2004, and continuing thereafter, up to and including the date Mrs. Hawkins left the Personnel Division of the BATF, Mrs. Hawkins was the target of disparate treatment on the basis of her race in that in that she was performing duties for which she was highly qualified, and which should have resulted in her promotion to at least the GS-12 pay level, but she was not so promoted, solely because of her race.

37. Her expertise in the area of the Personnel Division's budget allowed her to exercise a high level of independence in the performance of her duties, and permitted her to enhance her opportunities for obtaining a higher grade by virtue of the level of autonomy that she was allowed, and through her access to senior managers of the agency.

38. Mrs. Hawkins was subjected to racial discrimination in the terms and conditions of her employment in that she was denied all chances of a promotion when the Caucasian ADO removed all duties from her position description which would have enabled her to compete and apply for a promotion at the higher grade levels.  The modifications made by the ADO were intended by the ADO to change Mrs. Hawkins' job classification from that of an analyst to that of a support staffer in order to ensure that

9

Mrs. Hawkins would never have any opportunity for a future promotion despite the fact that Mrs. Hawkins was the Division's expert relative to budget matters.

39. If Mrs. Hawkins had been Caucasian instead of an African-American, the ADO would not have stripped the duties from her position description and changed her position description from a classification with promotion potential to one with no promotion potential. The aforementioned conduct by the ADO violated Title VII of the Civil Rights Act of 1964, as amended, and was committed solely because of the race of Mrs. Hawkins.

## COUNT THREE

40. Mrs. Hawkins adopts by reference paragraphs 1 through 39 above and incorporates them by reference as if fully set forth herein.

41. Commencing on or before May 2004, and continuing thereafter, up to and including the date Mrs. Hawkins left the Personnel Division of the BATF, Mrs. Hawkins was the target of disparate treatment on the basis of her race in that she was performing duties for which she was highly qualified, while no one employee in the Personnel Division possessed her level of knowledge or expertise relative to budget matters.

42. Despite her unique level of expertise, Mrs. Hawkins was subject to racial discrimination in the terms and conditions of her employment in that she was not allowed to perform the important duties that she had been assigned prior to the arrival of the ADO, despite her expertise and qualifications to perform them.

43. The ADO refused to allow Mrs. Hawkins to perform the budget duties with independence that Mrs. Hawkins had enjoyed prior to the arrival of the ADO because it would have resulted in another desk audit confirming that Mrs. Hawkins should be promoted to the grade of GS-343-12.

44. In order to forestall any chance that Mrs. Hawkins would be promoted as a result of a desk audit, the ADO stripped duties supporting a higher pay level from the

position description of Mrs. Hawkins and assigned those stripped duties to an unqualified Caucasian at three grades higher than Mrs. Hawkins, who was then directed to continue to perform the same duties for the benefit and support of the unqualified Caucasian female, who was now accorded supervisory status.

45. The purpose of the Defendant and his agents assigning the duties stripped from Mrs. Hawkins' position description to an unqualified Caucasian and requiring Mrs. Hawkins to continue to perform the duties, and report to the unqualified Caucasian with respect to those duties, was to enhance the Caucasian's chances for a further promotion while denying Mrs. Hawkins any fair consideration for a promotion solely because of her race. The ADO committed the foregoing acts in violation of Title VII of the Civil Rights Act of 1964, as amended.

## COUNT FOUR

46. Mrs. Hawkins adopts by reference paragraphs 1 through 45 above and incorporates them by reference as if fully set forth herein.

47. Prior to June 12, 2006, Mrs. Hawkins engaged in activity protected under Title VII of the Civil Rights Act of 1964, as amended, in the BATF of the Defendant.

48. The Defendant's agents in that subagency were aware of Mrs. Hawkins' protected activity when she applied for and accepted another position in another office within the BATF.

49. As a consequence of that protected EEO activity, Defendant's agents conspired, agreed and confederated to deny Mrs. Hawkins success in her new job by preparing an unfair closeout appraisal, which contained untrue statements, in retaliation for her having engaged in protected activity.

50. In furtherance of this conspiracy, the Defendant's agents issued Mrs. Hawkins the unfair and false closeout appraisal which contained un true statements, in order to damage her chances for a promotion in the future.

11

51. The foregoing acts of retaliation were taken against Mrs. Hawkins because she had engaged in protected activity, and were committed in violation of Title VII of the Civil Rights Act of 1964, as amended.

## JURY DEMAND

Plaintiff, pursuant to FRCP 38, demands trial by jury on the aforementioned claims.

## REMEDY

As a remedy for the discrimination practiced against Mrs. Hawkins, she requests this Honorable Court to enter judgment pursuant to 42 U.S.C. §2000e et seq. as follows:

a). By reason of the above conduct of the Defendant, award her general compensatory and special damages in the amount of $ thee hundred thousand dollars ($300,000), including damages for mental and emotional stress sustained as a result of Defendant's acts.

b). Require the Defendant to promote Mrs. Hawkins to a grade GS-13 Management Analyst, a position for which she is qualified, with back pay and interest, or pay her front pay until such position is available, with back pay and interest, and remove all damaging information from her personnel file relative to her tenure at BATF under the ADO.

c). Require the Defendant to provide further training to Mrs. Hawkins in the area of budget and finance in order that her credentials may be kept current under Defendant's promotion guidelines.

d). Enjoin the Defendant from discriminating against Ms. Hawkins and from retaliating against her for engaging in protected activity.

e). Declare the rights of the Plaintiff and obligations of the Defendant with respect to the acts which constitute the cause of action herein, irrespective of whether further relief can or will be granted.

f). Award Plaintiff her reasonable attorney's fees and other costs of this action; and such other and further relief as the Court may deem just.

January 4, 2007

_____
Brigitte R. Hawkins, Plaintiff

_____
Charles E. Wagner, Esq. (Bar # 94276)
Edward L. Allen, Esq. (Bar # 375341)
Attorneys for Plaintiff

Business Addresses:
Charles E. Wagner, Esq.
Silver Spring Centre
P.O. Box 14723
Washington, D.C. 20911
(202) 210-7801
E-Mail: Wagnelliot@Aol.com
Fax: 1-202-318-7185

Edward L. Allen
1400 Locust Road NW
Washington, D.C. 20012
(202) 545-0718
E-Mail Allen200@att.net

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

**I (a) PLAINTIFFS**
Brigitte R. Hawkins

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
Charles County, Md.
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**
Alberto Gonzales, Attorney General

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Charles E. Wagner, 7801-16th St NW
Washington DC 20012  202-210-7801

CASE NUMBER   1:07CV00010

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: Employment Discrimination

DATE STAMP: 01/04/2007

**JURY ACTION**

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP FOR PLAINTIFF

| | | | | |
|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4  ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5  ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6  ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and <u>one</u> in a corresponding Nature of Suit)

| ☐ A. Antitrust | ☐ B. Personal Injury/ Malpractice | ☐ C. Administrative Agency Review | ☐ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

### ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

| Real Property | Bankruptcy | Forfeiture/Penalty | |
|---|---|---|---|
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | ☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

②

| ☐ G. *Habeas Corpus/ 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ H. *Employment Discrimination*<br>☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 USC § 2000e-16

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ 300,000.   Check YES only if demanded in complaint  JURY DEMAND: ☒ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES  ☒ NO  If yes, please complete related case form.

DATE 1/4/07   SIGNATURE OF ATTORNEY OF RECORD [signature]

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.


N:\forms\js-44.wpd